## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| AIDA SHYEF AL-KADI,<br><br>      Plaintiff,<br><br>  v.<br><br>RAMSEY COUNTY,<br>RAMSEY COUNTY SHERIFF'S<br>OFFICE, and OFFICER JESSICA<br>WALKER, OFFICER RITA BASKFIELD,<br>SERGEANT LUGENE WERNER, OFFICER<br>ALLISON SCHABER, OFFICER DAN<br>FRERICHS, OFFICER ASHLEY PAUL,<br>OFFICER CHERYL CAUMIANT, and<br>OFFICER SHAWN LABARRE, in their<br>official and individual capacities,<br><br>      Defendants. | Civil No. 16-2642 (JRT/TNL)<br><br>**AMENDED COMPLAINT** |

## INTRODUCTION

1.    Plaintiff Aida Shyef Al-Kadi's claims arise out of the religious discrimination she suffered at the hands of Defendants during her brief detention at Ramsey County – Adult Detention Center in August 2013.

2.    Plaintiff alleges that Defendants violated her constitutional rights under the First and Fourteenth Amendments to United States Constitution, the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc-1, 2000cc-2(a), Article I of the Minnesota Constitution, and the Minnesota Human Rights Act, Minn. Stat. § 363A *et seq.*, by substantially burdening and interfering with Plaintiff's right to freely exercise her sincerely held religious belief by failing to accommodate her religious dress.

3.      Plaintiff also seeks punitive damages against Defendants for their deliberate disregard and reckless indifference to Plaintiff's rights.

## PROCEDURAL BACKGROUND

4.      Plaintiff filed this case *pro se* on August 4, 2016, alleging infringement on her freedom of religion and religious discrimination (Doc. No. 1).

5.      On October 31, 2016, an Initial Pretrial Conference was held before Magistrate Judge Mayeron, after which the Court referred this action to the Federal Bar Association's *Pro Se* Project.  (Doc. No. 14.)

6.      The Court issued a Protective Order and Pretrial Scheduling Order on November 3, 2016.  (Doc. Nos. 16, 17.)

7.      On November 29, 2016, Daniel Gustafson and Brittany Resch of Gustafson Gluek PLLC entered appearances in the case on behalf of the Plaintiff (Doc. Nos. 19, 20).

8.      On December 28, 2016, the Court issued a Supplemental Protective Order, as stipulated by the parties, which allowed Plaintiff and her newly-obtained counsel access to the surveillance video recorded at the Ramsey County – Adult Detention Center on August 14, 2013 (Doc. No. 23).

## PARTIES

9.      Plaintiff Aida Shyef Al-Kadi is a United States citizen and resident of Hennepin County, Minnesota.  Plaintiff is a Muslim.[1]

---

[1] Muslim refers to an adherent of Islam, and Islam refers to the religious faith of Muslims.

2

10.     Defendant Ramsey County is a political subdivision of the State of Minnesota with its county seat in St. Paul, Minnesota.  Ramsey County owns and operates the Ramsey County – Adult Detention Center ("RC-ADC"), located at 425 Grove St., Saint Paul, Minnesota, 55101.

11.     Defendant Ramsey County Sheriff's Office is the law-enforcement agency of Ramsey County, a political subdivision of the State of Minnesota.  Ramsey County Sheriff's Office provides public-safety services, including staffing the RC-ADC.  The Ramsey County Sheriff's Office is located at 425 Grove St., St. Paul, MN, 55101.

12.     Defendant Jessica (Hejny) Walker is a Correctional Officer at the RC-ADC. On August 14 and 15, 2013, she was employed by Ramsey County Sheriff's Office and was working while Plaintiff was detained at the RC-ADC.  In her official and individual capacities, Defendant Walker violated the constitutional and statutory rights of Plaintiff.

13.     Defendant Rita Baskfield is a Correctional Officer at the RC-ADC.  On August 14 and 15, 2013, she was employed by Ramsey County Sheriff's Office and was working while Plaintiff was detained at the RC-ADC.  In her official and individual capacities, Defendant Baskfield violated the constitutional and statutory rights of Plaintiff.

14.     Defendant Lugene Werner is the Sergeant at the RC-ADC.  On August 14 and 15, 2013, she was employed by Ramsey County Sheriff's Office and was working while Plaintiff was detained at the RC-ADC.  In her official and individual capacities, Defendant Werner violated the constitutional and statutory rights of Plaintiff.  Defendant

Werner had final policy-making authority for the Ramsey County Sheriff's Office in its policy decisions made regarding the treatment of Plaintiff on August 14 and 15, 2013.

15.     Defendant Allison Schaber is a Correctional Officer at the RC-ADC.  On August 14 and 15, 2013, she was employed by Ramsey County Sheriff's Office and was working while Plaintiff was detained at the RC-ADC.  In his official and individual capacities, Defendant Schaber violated the constitutional and statutory rights of Plaintiff.

16.     Defendant Dan Frerichs is a Correctional Officer at the RC-ADC.  He was employed by Ramsey County Sheriff's Office and was working while Plaintiff was detained at the RC-ADC on August 14 and 15, 2013.  In his official and individual capacities, Defendant Frerichs violated the constitutional and statutory rights of Plaintiff.

17.     Defendant Ashley (Vadnais) Paul is a Correctional Officer at the RC-ADC. On August 14 and 15, she was employed by Ramsey County Sheriff's Office and was working while Plaintiff was detained at the RC-ADC, 2013.  In her official and individual capacities, Defendant Paul violated the constitutional and statutory rights of Plaintiff.

18.     Defendant Cheryl Caumiant is a Correctional Officer at the RC-ADC.  On August 14 and 15, 2013, she was employed by Ramsey County Sheriff's Office and was working while Plaintiff was detained at the RC-ADC.  In her official and individual capacities, Defendant Caumiant violated the constitutional and statutory rights of Plaintiff.

19.     Defendant Shawn Labarre is a Correctional Officer at the RC-ADC.  On August 14 and 15, 2013, she was employed by Ramsey County Sheriff's Office and was

working while Plaintiff was detained at the RC-ADC.  In her official and individual

capacities, Defendant Labarre violated the constitutional and statutory rights of Plaintiff.

## JURISDICTION AND VENUE

20.    This action arises under 42 U.S.C. §§ 1983 and 1988, and the United States

Constitution and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C.

§§ 2000cc-1, 2000cc-2(a).  Therefore, the Court has jurisdiction over the federal

questions pursuant to 28 U.S.C. §§ 1331, 1343, and 2201.  The Court also has

supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over Plaintiff's state-law claims,

which arise under the Minnesota State Constitution and the Minnesota Human Rights

Act, Minn. Stat. § 363A *et seq.*

21.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)

and (c) because Defendants reside in this judicial district and the unlawful practices

giving rise to Plaintiff's causes of action occurred within the State and District of

Minnesota.

## FACTUAL ALLEGATIONS

**A.    Plaintiff's Sincerely Held Religious Belief in Islam**

22.    Plaintiff is a Muslim who holds a strong and sincere religious belief in

Islam.

23.    In Islam, hijab (meaning to conceal or hide from view) is the principle of

promoting decency and modesty in interactions between members of the opposite sex.

Hijab also refers to the modest style of dressing for Muslim women, and has come to

signify the headscarf, which is the covering many Muslim women use to hide their hair, neck, and bosom.

24.     Plaintiff holds a strong and sincere religious belief in the practice of wearing hijab.  Plaintiff wears hijab in the form of a scarf (also referred to as "*a* hijab") covering her hair, ears, and neck, and also in the form of an abaya (a long, unfitted dress) that covers her figure, arms, and legs.

25.     Hijab must be worn in public, and Plaintiff may only remove her hijab to reveal her hair and neck in front of her immediate family.  Plaintiff wears hijab in public as a representation of her love, gratitude, obedience, and hope in her Lord.  She considers the wearing of these garments a religious mandate.

26.     Wearing hijab is a significant aspect of Plaintiff's Islamic faith.  Not being allowed to wear an abaya, but more importantly, not being allowed to wear a hijab while in public substantially interferes with and substantially burdens Plaintiff's ability to practice her Islamic faith.

27.     Not being permitted to wear hijab in public causes Plaintiff to feel embarrassed, unsafe, dehumanized, and disconnected with her faith.

**B.     Plaintiff Turns Herself in for Unresolved, Minor Traffic Violations**

28.     Plaintiff was scheduled to appear in Ramsey County District Court on June 25, 2013, on a charge of driving after revocation.  However, Plaintiff had to take her sick daughter to the hospital unexpectedly.  Due to Plaintiff's failure to appear, a bench warrant was issued.

6

29.     On August 12, 2013, Plaintiff went to the police station nearest her home—Southdale Regional Service Center in Edina, Minnesota—to turn herself in on the outstanding warrant.  Plaintiff was wearing a hijab and an abaya made of light and thin material, with a short-sleeve shirt and pants on underneath.

**C.     Plaintiff is Booked into Hennepin County – Adult Detention Center**

30.      Plaintiff was booked into the Hennepin County – Adult Detention Center ("HC-ADC") late in the afternoon of August 12, 2013, by Hennepin County Sheriff's Officer Lightner.  Officer Lightner noted that Plaintiff was cooperative throughout this process.

31.     Pursuant to HC-ADC's booking-process policy, Plaintiff needed to have her photograph taken.  HC-ADC's policy required that Plaintiff remove her hijab for the photograph.  Plaintiff was treated with respect and dignity when she removed her hijab and was not forced to do so in front of any male officers or detainees.

32.     HC-ADC changed this policy on March 20, 2014, to allow inmates to wear their hijab for the booking photograph.  HC-ADC policy now allows for two photographs to be taken: one in which the inmate is wearing the hijab, and a second in which the inmate is not wearing the hijab.

33.     Plaintiff was given an inmate uniform and provided a place to change.  HC-ADC provided Plaintiff with a t-shirt to place on her head as hijab while she was detained in HC-ADC.  HC-ADC officers and staff were respectful throughout this process.

34.     Plaintiff had six pending traffic charges in Hennepin County District Court for speeding, driving after suspension, and driving without insurance.  After these

7

charges were dismissed or resolved in the late afternoon of August 13, 2013, she was released to Ramsey County late that evening.

**D.      Plaintiff is Transported and Booked into Ramsey County – Adult Detention Center**

35.      In the late morning of August 14, 2013, Plaintiff was transported to RC-ADC by Hennepin County Sheriff's Officer L. Seery.

36.      Upon arrival at RC-ADC shortly after noon, Plaintiff and three other women were escorted into the sallyport by former Deputy Ramsey County Sheriffs Rob Redman and Kelly Buchannan, along with two other officers, one male and one female. On information and belief, this second female was Defendant Officer Baskfield.  Plaintiff and the other women were handcuffed two-by-two and made to face the wall.

37.      Plaintiff was again dressed in her hijab and abaya.  The other three women were wearing jeans and tank-tops or tee-shirts.  None of the women had purses or bags, or wore hats.

38.      Immediately upon their entrance into the transfer bay, Officer Baskfield singled out Plaintiff by pat-searching her while the three other officers watched.  Officer Baskfield requested Plaintiff take off her "burka".  A burka is culturally and physically different from the hijab and abaya that Plaintiff wears.

39.      Plaintiff calmly explained to Officer Baskfield that she could not do so in front of men.  Plaintiff explained that she would do so, but only in a private space in front of female officers.  Plaintiff put up her hand in a gesture to make Officer Baskfield stop

8

touching her hijab, and Officer Baskfield seized Plaintiff's arm.  Plaintiff was told to stop resisting arrest.

40.     Plaintiff was taken from the transfer bay into the open-booking room, and her face and body were pushed up against the wall.  The other three women detainees walked of their own volition from the transfer bay to the open-booking room and were loosely escorted by other officers.

41.     Plaintiff was taken to a holding room by Officer Baskfield and one of the male officers.  On information and belief, this male officer was Defendant Officer Frerichs.  Officer Baskfield went into the holding room with Plaintiff, while Officer Frerichs stood in the doorway.  At this time, two additional male officers arrived and stood just outside the door.  On information and belief, one of these officers was Kevin Davy.  Plaintiff had exhibited no aggressive behavior at this point and continued to calmly explain to the officers the mandates of her religion with respect to her hijab and abaya.

42.     The officers told Plaintiff that safety was more important than religion and that they could not trust her because she resisted the female officer earlier.  The officers explained that—because her "burka" was a weapon—if she wanted to leave the "burka" on, she must remain in the holding room, but if she wanted to be in the open-booking room, she must remove the "burka."

43.     Plaintiff chose to stay in the holding room and complied with the officers' orders to take off her hijab and hair net—while the male officers were still standing in the

doorframe watching.  Officer Baskfield took the scarf and hair net and pat-searched Plaintiff in front of the three male officers.

44.     Officer Baskfield requested that Plaintiff remove her abaya, and Plaintiff continued to request that only female staff be present.  Plaintiff was told that if she didn't cooperate, she would be transferred to an underground cell for people who refused to follow the rules.  Feeling compelled to remove it, Plaintiff began to take the abaya off, but first stopped to plead that the male officers either leave or turn their backs for modesty.  Officer Frerichs turned his back, while the other two male officers remained outside the door.

45.     Plaintiff removed her abaya and shoes, and Officer Baskfield completed her pat-search of Plaintiff, finding nothing.

46.     Plaintiff was given back her hijab, abaya, and shoes.  Plaintiff continued to calmly speak with the officers, and she was eventually allowed to get dressed while the officers remained in the doorway.

47.     According to the Incident Report written by Defendant Hejny on August 14, 2013, Defendant Sergeant Werner approved of Plaintiff wearing her "burka" as long as she stayed in a holding room.

**E.     Plaintiff is Booked into Ramsey County – Adult Detention Center**

48.     Later, Plaintiff—wearing her hijab and abaya—was escorted to the booking area to have her slap prints taken and was promptly returned to her holding room.

49.     The surveillance video shows other detainees walking freely around the open-booking area at this time.

10

50.     Later, Plaintiff was again removed from her cell and walked—via escort—to the front booking desk for an interview with a male officer.  After a few minutes, she was escorted back to a holding room.

51.     On the video, Plaintiff can be seen crying, praying, and sleeping in her room for the next two and a half hours.

52.     Again, on the other video monitors, other detainees can be seen walking without escorts throughout the open-booking area.

53.     According to the booking papers, Plaintiff was booked into RC-ADC by Officer Frerichs around 12:45pm.  Officer Frerichs did not note that Plaintiff was being uncooperative during this process.

54.     At approximately 3:30pm, Plaintiff was again escorted out of her room to another interview in the open-booking room.

55.     Video shows that, while Plaintiff was being questioned in the open-booking room, a female officer with short hair stood directly behind Plaintiff.  No other detainee in the open-booking room was escorted to this same extent.

56.     The video shows this short-haired, female officer being handed a white bed sheet while she stood behind Plaintiff; and then shows her escorting Plaintiff to the booking-photo desk.

57.     According to Defendant Hejny's Incident Report, Defendant Hejny and the other defendant officers asked Defendant Sergeant Werner how to handle Plaintiff's request to wear her religious dress, and Defendant Sergeant Werner said she would allow

Plaintiff to wear a bed sheet as a burka so that she could be out to get through the booking process and use the phones.

58.    The booking-photo desk was set up in a corner of the open-booking room, where the video shows other detainees, both male and female, walking freely.  The video also shows several officers, both male and female, walking throughout the room.

59.    On information and belief, Plaintiff was with Defendants Werner, Schaber, and Hejny at the booking-photo desk, including the female with short hair, throughout this process.  The video shows the officers and Plaintiff having a discussion—a discussion about Plaintiff's hijab.  When Plaintiff was hesitant to take off her hijab for the photo, the female officer with short hair attempted to forcefully remove the hijab from Plaintiff's head.  This caused Plaintiff to back away in a defensive manner.  The other female officers quickly surrounded Plaintiff.

60.    Plaintiff eventually took off her hijab for the identification photo. Afterward, Plaintiff was given the white bed sheet to wear as a hijab.

61.    Plaintiff's photo without her hijab was put on her identification wristband, which she was forced to wear while she was detained.

62.    Throughout this entire process, Plaintiff was not treated with the same level of respect and dignity given to other detainees in the RC-ADC.

63.    Plaintiff later found out that her identification photo, showing her without her hijab, was posted to a public website: mugshots.com.

64.     After the booking photograph was taken, Plaintiff was allowed to make her one phone call.  She called her daughter and asked for bail money, but no one could afford Plaintiff's bail amount of $50.

65.     After her phone call, Plaintiff was escorted to a room by two female officers.  She was given jail-issued clothing and ordered to strip naked.  The officers placed the jail-clothes far away and made Plaintiff walk naked across the room.  The officers laughed at Plaintiff, and mocked her about the conversation she had with her daughter and about how she could not afford bail.

66.     Plaintiff was humiliated and felt immodest.  She had again been forced to violate a mandate of her religion.

67.     Plaintiff was escorted to her cell in general population around 4:40pm by Officer (Vadnais) Paul, where she stayed, alone, until the morning of August 15, 2013, when she appeared before a judge.  Plaintiff was still wearing the white bed sheet as hijab when she appeared before the judge to have her charges resolved.

68.     On March 20, 2014—seven months after Plaintiff's temporary detention— RC-ADC changed Policy 442, "Religious Programs and Services," to provide a facility-approved hijab to female inmates while in custody.  The 2014-version also provides that a female inmate wearing the hijab will not be required by RC-ADC staff to remove the hijab while in the presence of male inmates or staff, unless an immediate security risk exists.  Moreover, the policy now addresses the identification and booking photo process: it mandates that only female staff will photograph the inmate while not wearing the hijab,

and that staff will capture a second photo of any female inmate wearing the hijab for

media release purposes.

69.    Policy 442 now reads:

**RELIGIOUS HEAD COVERINGS**

1. Inmates, who practice a religion that requires a particular head covering, should generally be accommodated subject to the need to identify inmates and maintain security.

2. Head coverings shall be searched before being worn in the housing areas of the facility and shall be subject to random searches for contraband. Personal head coverings should be exchanged in favor of office-supplied head coverings when available and appropriate.

3. Inmates wearing headscarves or other approved coverings shall not be required to remove them while in the presence of or while visible to the opposite sex, if they so desire. Religious garments that substantially cover the inmate's head and face shall be temporarily removed during the taking of booking and identification photographs.

4. To the extent reasonably practicable, alternative housing may be considered to accommodate an inmate's need for religious attire, while meeting the security needs of the facility.

**F.    Plaintiff Files a Charge of Discrimination with the Minnesota Department of Human Rights**

70.    On July 9, 2014, Plaintiff filed a Charge of Discrimination with the

Minnesota Department of Human Rights ("MDHR"), alleging failure to accommodate

and religious discrimination under the Minnesota Human Rights Act. After Ramsey

County answered, the parties attempted mediation through the MDHR on February 18,

2015, but were unable to resolve the matter. The MDHR resumed its investigation of the

Charge, but ultimately made a determination of no probable cause on December 31, 2015.

71.     Plaintiff appealed the MDHR's determination.

72.     The MDHR declined to change its determination, and issued Plaintiff a Right to Sue letter on June 24, 2016.

**G.      Plaintiff Filed an Official Complaint with Ramsey County Sheriff's Office ("RCSO")**

73.     In July of 2014, Plaintiff filed an Internal Affairs Complaint Form with the RCSO, detailing her experiences of religious discrimination at RC-ADC.  RCSO acknowledged receipt of the complaint, and the RC-ADC changed its policy regarding the wearing of religious dress in the facility but did not speak with Plaintiff regarding her personal experience or treatment.

### CLAIMS FOR RELIEF

### Count I

**Violation of the Free Exercise Clause
of the First Amendment to the United States Constitution
(Against All Defendants)**

74.     Plaintiff incorporates all previous allegations as if fully set forth herein.

75.     The First Amendment guarantees that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I.

76.    Plaintiff brings this First Amendment claim pursuant to 42 U.S.C. § 1983, and which is made applicable to the states by incorporation into the Due Process Clause of the Fourteenth Amendment.

77.    Inmates retain some degree of protection afforded by the First Amendment, including protection under its directive that no law shall prohibit the free exercise of religion.

78.    While temporarily detained at RC-ADC, Defendants imposed a substantial burden on conduct mandated by Plaintiff's religious belief by treating her differently because of her religious dress, ordering her to take off her hijab in front of males, and giving her a bed sheet to wear instead of a scarf.  Through Defendants' actions, Plaintiff was pressured to modify her behavior and to seriously violate her religious beliefs.  As a result, Plaintiff's exercise of her religion was substantially burdened.

79.    Plaintiff was forced to choose between following the precepts of her religion and forfeiting benefits otherwise generally available to other inmates, such as walking freely around the open-booking room.

80.    The posting of Plaintiff's booking photo without hijab online further violated Plaintiff's rights.  Defendants' interference with Plaintiff's rights was more than an inconvenience or short-term occurrence, but rather meaningfully curtailed Plaintiff's ability to express adherence to her faith both while she was detained and long after she was released.

81.    Defendants changed their policy regarding religious dress less than one year after Plaintiff was detained to allow for the same things she was prohibited from

16

doing—to allow female detainees to wear a facility-approved hijab and take a booking photo with the hijab on.

82.     Defendants' remediation shows that their interest was not overriding or compelling, and they did not use the least restrictive means.  Nor were Defendants' acts and practices related to a legitimate institutional interest.

83.     The acts and omissions of Defendants constitute unreasonable restrictions on Plaintiff's clearly-established right to exercise her religion, as guaranteed by the First Amendment to the United States Constitution.

84.     Plaintiff has been subjected to and injured by these alleged violations and suffers from emotional distress, humiliation, embarrassment, and other serious damages as a direct and proximate result of Defendants' acts and omissions specifically set forth above.

## Count II

### Violation of the Equal Protection Clause
### of the Fourteenth Amendment to the United States Constitution
### (Against All Defendants)

85.     Plaintiff incorporates all previous allegations as if fully set forth herein.

86.     The Fourteenth Amendment guarantees that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.

87.     Plaintiff brings this Fourteenth Amendment claim pursuant to 42 U.S.C. § 1983.

88.   The Equal Protection Clause requires the State to treat all similarly-situated people equally.  Moreover, the Equal Protection Clause entitles each detainee to a reasonable opportunity to pursue her or his faith comparable to the opportunity afforded fellow detainees who adhere to conventional religious precepts.

89.   Religion is a suspect classification.

90.   Plaintiff was singled out from the other detainees based on her religious dress from the moment she stepped into the sallyport, when she was escorted around, kept in a holding room, and especially when she was ordered to take off her hijab and abaya in front of male officers—an embarrassing and shame-inducing command that violated her religious mandate of modesty.

91.   Defendants were aware that Plaintiff had come from HC-ADC, had already been searched, and had no reason to believe that she was dangerous or was stowing weapons in her hijab.

92.   When Defendants treated Plaintiff differently from similarly-situated detainees and discriminated against her based on her religion and dress, Plaintiff was denied her clearly-established right to equal protection.

93.   The acts and omissions of Defendants constitute religious discrimination in violation of the clearly-established Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

94.   Plaintiff has been subjected to and injured by these alleged violations and suffers from emotional distress, humiliation, embarrassment, and other serious damages

as a direct and proximate result of Defendants' acts and omissions specifically set forth
above.

### Count III

**Violation of Religious Land Use and Institutionalized Persons Act ("RLUIPA") § 3,
42 U.S.C. §§ 2000cc-1 and 2000cc-2(a)
(Against All Defendants)**

95.     Plaintiff incorporates all previous allegations as if fully set forth herein.

96.     Section 3 of RLUIPA provides that "[n]o government shall impose a
substantial burden on the religious exercise" of an institutionalized person unless the
government demonstrates that the burden "is in furtherance of a compelling
governmental interest" and "is the least restrictive means of furthering" that interest.

97.     Plaintiff was an institutionalized person under RLUIPA.  RC-ADC is
owned, operated, or managed by, or provides public services on behalf of, any political
subdivision of the State, and is a pretrial-detention facility.

98.     A person may assert a violation of RLUIPA as a claim and obtain
appropriate relief against a government, which includes counties, their instrumentalities
and officers, and persons acting under color of state law.

99.     A substantial burden exists under RLUIPA where either a follower is
forced to choose between following the precepts of her religion and forfeiting benefits
otherwise generally available to other inmates or the government puts substantial
pressure on an adherent to substantially modify her behavior and to violate her beliefs.

100.    While temporarily detained at RC-ADC, Defendants imposed a substantial
burden on conduct mandated by Plaintiff's sincerely held religious belief by ordering her

19

to take off her hijab in front of males, escorting her, keeping her in a holding room, posting her photo without hijab online, and giving her a bed sheet to wear instead of a scarf.

101.   Plaintiff was forced to choose between following the precepts of her religion and forfeiting benefits otherwise generally available to other inmates, such as walking freely around the open-booking room.  Defendants' interference with Plaintiff's rights was more than an inconvenience or short-term occurrence, but rather meaningfully curtailed Plaintiff's ability to express adherence to her faith.

102.   Defendants' changed their policy with respect to religious dress less than one year after Plaintiff was detained to allow for the same things she was prohibited from doing.  As a result, Defendants are unable to show a compelling governmental interest for their treatment of Plaintiff, and cannot show that their actions were the least restrictive means.

103.   Plaintiff has been subjected to and injured by these alleged violations and suffers from emotional distress, humiliation, embarrassment, and other serious damages as a direct and proximate result of Defendants' acts and omissions specifically set forth above.

### Count IV

**Violation of Article I, Section 16**
**of the Minnesota Constitution**
**(Against All Defendants)**

104.   Plaintiff incorporates all previous allegations as if fully set forth herein.

20

105.    Section 16 of the Minnesota Constitution guarantees that "[t]he enumeration of rights in this constitution shall not deny or impair others retained by and inherent in the people.  The right of every man to worship God according to the dictates of his own conscience shall never be infringed; . . . nor shall any control of or interference with the rights of conscience be permitted."

106.    Section 16 protects an individual's right to the free exercise of religion according to the dictates of the individual's conscience, and precludes unwarranted governmental interference with religious freedom.  Only governmental interests in peace or safety, and protections against acts of licentiousness will excuse governmental imposition on religious freedom.

107.    Defendants substantially burdened, infringed on, and interfered with Plaintiff's ability to freely exercise her religion by singling Plaintiff out in the sallyport, knowingly forcing her to take her hijab off in front of male officers in clear violation of her religion, refusing to allow her to take her booking photo with her hijab on, and posting her booking photo without hijab online.

108.    Defendants changed their policy regarding religious dress less than one year after Plaintiff was detained to allow for the same things she was prohibited from doing.  This shows that the Defendants' interest is not overriding or compelling, and the Defendants did not use the least restrictive means.

109.    Plaintiff has been subjected to and injured by these alleged violations and suffers from emotional distress, humiliation, embarrassment, and other serious damages

as a direct and proximate result of Defendants' acts and omissions specifically set forth above.

## Count V

**Violation of Minnesota Human Rights Act ("MHRA"),
Minnesota Statutes § 363A *et seq.*
(Against All Defendants)**

110.   Plaintiff incorporates all previous allegations as if fully set forth herein.

111.   The Minnesota Human Rights Act states that it is an unfair discriminatory practice to discriminate against any person in the admission to any public service because of a person's religion.

112.   A public service means any public facility, department, or agency that is owned, operated, or managed by or on behalf of the state of Minnesota, or any subdivision thereof, including any county.  The RCSO and RC-ADC are public services under the MHRA.

113.   Defendants discriminated against Plaintiff on account of her religion while she was admitted to RC-ADC and while she was detained by singling her out in the sallyport, knowingly forcing her to take her hijab off in front of male officers in clear violation of her religion, refusing to allow her to take her booking photo with her hijab on, and posting her booking photo without hijab online.

114.   Defendants refused to provide a reasonable accommodation for Plaintiff's religious dress in a manner that would allow Plaintiff to freely exercise her sincerely held religious belief.

115.    The sole reason for Defendants' unlawful conduct was due to Plaintiff's religion.

116.    Defendants' intentional conduct constitutes an unfair discriminatory practice, and amounts to a violation of Plaintiff's rights under the Minnesota Human Rights Act.

117.    Plaintiff has been subjected to and injured by these alleged violations and suffers from emotional distress, humiliation, embarrassment, and other serious damages as a direct and proximate result of Defendants' acts and omissions specifically set forth above.

## Count VI

**Punitive Damages**
**(Against the Individual Defendants in Their Individual Capacities)**

118.    Plaintiff incorporates all previous allegations as if fully set forth herein.

119.    Defendants acted in deliberate disregard of Plaintiff's rights by their refusal to accommodate Plaintiff's religious dress in a manner that allowed Plaintiff to freely exercise her sincerely held religious belief.

120.    Defendants discriminated against Plaintiff with reckless indifference to her religious rights.

121.    Defendants' conduct described above was motivated by evil motive or intent, and involved reckless or callous indifference to Plaintiff's federally protected rights; this entitles Plaintiff to an award of punitive damages.

122.    An award of punitive damages here is appropriate to deter future unlawful conduct and to punish the willful and malicious conduct of Defendants.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for relief as follows:

a.  That judgment be entered against Defendants on behalf of Plaintiff;

b.  That the unlawful conduct alleged herein be declared to be illegal and in violation of the federal and state constitutional, statutory, and common law claims alleged herein;

c.  That Defendants be enjoined from engaging in the same or similar practices alleged herein against other detainees and inmates who wish to freely exercise their religion through dress;

d.  That Defendants provide inmates with places to change, if available and requested, and with hijab in the form of headscarves and long-sleeved undershirts, if desired and requested.

e.  That Defendants participate in events hosted by the Muslim community in Minnesota to foster a better relationship between the parties and work to eliminate the ignorance and bias towards Muslims;

f.  That Plaintiff recover nominal damages and compensatory damages for emotional distress, personal humiliation, and pain and suffering in an amount of $300,000 from Defendants; and

g.  That Plaintiff recover punitive damages in an amount of $300,000 from Defendants in their individual capacities;

24

h.  That Plaintiff recover her costs, expenses, reasonable attorney's fees, and pre-

judgment interest pursuant to 42 U.S.C. § 1988 and other applicable laws; and

i.  All other relief allowed by law and equity.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands

a trial by jury on all issues so triable.


Dated: March 2, 2017                           *s/Brittany N. Resch*
                                               Daniel E. Gustafson (#202241)
                                               Brittany N. Resch (#0397656)
                                               **GUSTAFSON GLUEK PLLC**
                                               Canadian Pacific Plaza
                                               120 South Sixth Street, Suite 2600
                                               Minneapolis, MN 55402
                                               Telephone: (612) 333-8844
                                               Facsimile: (612) 339-6622
                                               dgustafson@gustafsongluek.com
                                               bresch@gustafsongluek.com

                                               ***Counsel for Plaintiff***